IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**BEVERLY BETANCUR,**

    **Plaintiff,**

vs.                                                Case No. 4:06cv428-RH/WCS

**STATE OF FLORIDA,
DEPARTMENT OF HEALTH, et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

    Defendants Cerio, François, Viamonte Ros, Meggs, and the State of Florida Department of Health filed a motion to dismiss the third amended complaint. Doc. 72. Defendants raise five separate grounds for dismissal in their motion, which was filed on April 26, 2007. *Id.*, at 7. An order was entered advising the *pro se* Plaintiff to respond, doc. 79, even though at that time Plaintiff had already has submitted a response to the motion, doc. 74, and an amended response, doc. 75. Plaintiff was allowed to stand on her latest response, doc. 75, or submit a second amended response to the motion. On June 18, 2007, Plaintiff filed a second amended response, doc. 82. The motion to dismiss is ready for a ruling.

**Allegations of the third amended complaint, doc. 58**

Plaintiff holds a license from the Naturopathic National Council, Inc., and resides in the State of Connecticut. Doc. 58, p. 2. The Naturopathic National Council, Inc. [hereinafter "NNCI"], is "a national licensing agency organized and existing under the laws of the State of Connecticut . . . ." *Id.* The NNCI "is approved under IRS Code 501(c)(6) as a Medical Board and has its principal place of business in the City of Stamford, County of Fairfield, State of Connecticut." *Id.* Defendants are state officials, including the Florida Department of Health, the General Counsel for the Department of Health, the Secretary for the Department of Health, and the State Attorney for the Second Judicial Circuit, Leon County, Florida. *Id.*, at 1-2.

Plaintiff describes this case as one seeking a declaratory judgment to determine "whether or not the Supremacy Clause of the United States Constitution a federal trademark pre-empts an inconsistent state statute or regulation . . . ." Doc. 58, p. 3. Plaintiff seeks a declaration that FLA. STAT. chapter 462[1] is unconstitutional, and seeks to enjoin Defendants from enforcing this statute. *Id.*, at 3. In 2004, when Plaintiff was not able to obtain a license to practice naturopathy in the State of Florida, she founded the NNCI. *Id.*, at 6. The NNCI was to "regulate the standards for the Doctor of Naturopathy, N.D." and, as a courtesy, Plaintiff sent a letter to all 50 states advising that the NNCI intended to "enter into such licensing activity." *Id.*

The NNCI was issued a Certificate of Registration No. 3,047,099, on January 17, 2006, from the U.S. Patent and Trademark Office. *Id.* Plaintiff alleges that the issuance

---

[1] The third amended complaint does not identify any particular statute that Plaintiff contends is unconstitutional. Rather, Plaintiff appears to be attacking all of chapter 462.

Case No. 4:06cv428-RH/WCS

of this certification by Patent and Trademark Office "authorizes licensure for the Doctor of Naturopathy, N.D." *Id.*

Plaintiff provided a copy of the registration as Exhibit A, attached to the third amended complaint. Doc. 58-2, p. 3. That document reveals a "certification mark" in the name of "Naturopathic National Council, Inc.," registered on January 17, 2006, and bearing "Reg. No. 3,047,099." *Id.* The next attachment to the complaint is a license issued to Plaintiff Beverly Betancur, from the Naturopathic National Council. Doc. 58-2, p. 5. The license states Plaintiff is "licensed nationally by this Council as a Doctor of Naturopathy, N.D." and the license is "Current through 04/15/07." *Id.* Plaintiff assigns a trademark symbol to the phrase "Doctor of Naturopathy, N.D.," apparently claiming her personal right to that trademark. *Id.*, p. 6.

On February 6, 2006, Plaintiff, as CEO of the NNCI, "issued a cease and desist order to the State of Florida advising that 'The Naturopathic National Council, Inc. owns the title Doctor of Naturopathy, N.D. and the derivative title Doctor of Naturopathic Medicine.' " *Id.*, at 7. Plaintiff stated that the "use of either title by individuals licensed by the state causes trade identity confusion; therefore, it is a violation of 15 USCA § 1125(a) of the Lanham Trademark Act." *Id.*

The Department of Health responded to Plaintiff's letter by advising Plaintiff that none of the arguments presented in that letter provided "a basis for changing Chapter 462, Florida Statutes, the law that governs naturopathy in Florida." Exhibit D (Doc. 58, attachment, p. 10). Furthermore, as to the request to "cease and desist" giving the Doctor of Naturopathy title to those licensed in Florida, the letter advised that only seven

persons hold a license to practice naturopathy in Florida and no state law prevents their use of the title. *Id.*

Plaintiff sent a letter in response to the Department of Health's letter stating that the NNCI "alone has the authority to issue naturopathic licenses in the State of Florida under the Dormant Commerce Clause, the Tenth Amendment to the United States Constitution and under federal trademark registration No. 3,047,099 . . . ." Ex. E (Doc. 58, p. 12). Plaintiff also stated that those seven persons "who are fraudulently licensed by the State of Florida as naturopaths cannot use the title Doctor of Naturopathy, N.D. or any of its derivatives without the authorization of the Naturopathic National Council, Inc." *Id.* Other letters were exchanged and, thereafter, Plaintiff reports "there still exist[s] a controversy between the parties" as to the NNCI's "legal right to license traditional naturopaths in the State of Florida." Doc. 58, p. 8.

Plaintiff asserts that "the State of Florida cannot hinder or obstruct the free use of a license granted by the Naturopathic National Council, Inc., a body authorized under its Certification mark by the United States Patent and Trademark Office to issue Plaintiff's occupational license[,] because federal law preempts state law." *Id.*, at 10. Plaintiff further claims that "Defendants are in violation of 15 U.S.C.A. § 1125(a) because they have caused trade identity confusion by the unauthorized use of the trademarked title Doctor of naturopathy, N.D. or its derivatives." *Id.*, at 11. Further, Plaintiff claims that Defendants have violated § 1125(a) "due to their practices of unfair competition . . . ." *Id.* Plaintiff also claims her rights under 42 U.S.C. § 1983 are violated because Defendants have discriminated against her by denying Plaintiff the right to obtain a license in Florida. *Id.*, at 12. Finally, Plaintiff alleges that Chapter 462 of the Florida

Statutes violates the Thirteenth Amendment of the U.S. Constitution "in that it has the psychological effect of sending Plaintiff and traditional naturopaths in general into involuntary servitude by forcing them out of their profession under the threat of prosecution into other professions against their will . . . ." *Id.*, at 13. Plaintiff seeks declaratory, injunctive, and monetary damages as relief. *Id.*, at 13-16.

**Defendants' arguments, doc. 72**

Defendants contend that the complaint should be dismissed with prejudice because the Department of Health and the individual Defendants, who are sued in their official capacities, have Eleventh Amendment and sovereign immunity from suit. Doc. 72, p. 7. Defendants sued in their individual capacities assert qualified immunity from suit. *Id.* Further, Defendants contend that the complaint fails to state a claim upon which relief may be granted. *Id.*

Due to the Eleventh Amendment and lack of a causal connection to actions by Francois and Cerio, the only two proper Defendants in this case are Rios and Meggs in their official capacities. The defense of qualified immunity is likewise probably correct with respect to all Defendants in their individual capacities. But the last argument is dispositive. Therefore, the court need not address the first two.

**Standard of Review**

Dismissal of a complaint, or a portion thereof, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted should not be ordered unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.CT. 99, 102, 2 L.Ed.2d 80 (1957). A court must accept the factual allegations of the

complaint as true. Shotz v. American Airlines, Inc., 420 F.3d 1332, 1334-35 (11th Cir. 2005). "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

**Analysis**

The claims against the individual Defendants are based on their actions in advising Plaintiff that Florida law no longer allows persons to be licensed to practice naturopathy in Florida and only those who were "grandfathered" long ago (seven persons at this point) may continue to practice naturopathic medicine. Further, Defendants refused to comply with Plaintiff's request for the state to "cease and desist" and recognize the Naturopathic National Council, Inc.'s "exclusive right" to the title Doctor of Naturopathy under the Lanham Trademark Act. Plaintiff's letter asserted that the Council owned "the title Doctor of Naturopathy, N.D. and its derivative title Doctor of Naturopathic Medicine" and the Defendants refused to recognize that claim of right.

At the outset it is observed that two prior challenges in this court to the constitutionality of various provisions of Chapter 462 have been upheld. *See* Reinhardt v. Francois, 4:05cv107-WS/WCS (Jan. 31, 2006) (dismissing on *res judicata* grounds and noting that plaintiff previously lost a challenge to the grandfathering and saving clauses of the Naturopathy Practice Act in state case 03-CA-1271) and Freiberg v. Francois, 4:05cv177-RH/WCS (Aug. 15, 2006) (dismissing case and finding the complaint failed to state either a due process, First Amendment, or dormant commerce clause claim).

The State of Florida has a significant interest in the regulation of professions. *See* <u>Douglas v. Nobel</u>, 261 U.S. 165, 43 S.CT. 303, 67 L.Ed. 590 (1923) (noting that "a Legislature may, consistently with the federal Constitution, delegate" to a state board or agency the authority to grant, withhold, or revoke a license to practice a profession and may determine whether an applicant meets a standard of fitness); *see also* <u>Goldfarb v. Virginia State Bar</u>, 421 U.S. 773, 95 S.CT. 2004, 44 L. Ed. 2d 572 (1975).  The States have " 'great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.' " <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 475, 116 S.CT. 2240, 135 L.Ed.2d 700 (1996) (quoting Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 756, 105 S.CT. 2380, 85 L.Ed.2d 728 (1985)), *quoted in* <u>Gonzales v. Oregon</u>, 546 U.S. 243, 270, 126 S.CT. 904, 923 (2006).

> It is recognized without exception that the police power of a state extends to the right to regulate trades and callings concerning public health. Practitioners of the healing arts are properly subject to police regulation, the details of which are primarily with the Legislature and are not to be interfered with by the federal court so long as fundamental constitutional rights are not violated.

<u>Polhemus v. American Medical Ass'n</u>, 145 F.2d 357, 359 (10th Cir. 1944).

Consequently, challenges to state laws precluding the practice of naturopathy or prescribing additional requirements before one may be licensed to practice of naturopathy have been universally upheld.  <u>Idaho Ass'n of Naturopathic Physicians, Inc. v. U. S. Food and Drug Administration</u>, 582 F.2d 849 (4th Cir. 1978) (denying all claims including due process and equal protection claims concerning refusal to license practitioners of naturopathy and relying upon seven instances in which the Supreme

Court "summarily affirmed or dismissed at least seven[2] cases challenging state regulation of naturopathy"), *cert. denied* 440 U.S. 976 (1979); *see also* Polhemus v. American Medical Ass'n, 145 F.2d 357 (10th Cir. 1944) (finding no federal question presented in challenge to the "Grandfather Clause" of the Basic Science Law passed by the New Mexico Legislature which did not allow a naturopathic physician to practice without an examination).  In the Idaho Ass'n. case, the Fourth Circuit Court of Appeals concluded that the argument that states must recognize naturopathy as a distinct form of medicine and that naturopathic practitioners are "entitled to licensing requirements different from those imposed on other physicians" has been "firmly, repeatedly, and authoritatively rejected." Idaho Ass'n of Naturopathic Physicians, Inc., 582 F.2d at 852-

---

[2] The cases cited were:  Davis v. Beeler, 185 Tenn. 638, 207 S.W.2d 343 (1947) (holding that prohibiting naturopathy in Tennessee was a valid exercise of the State's police power and not discrimination), appeal dismissed for want of a substantial federal question, 333 U.S. 859, 68 S.CT. 745, 92 L.Ed. 1138 (1948); Taylor v. Oklahoma, 291 P.2d 1033 (1955) (upholding judgment which enjoined defendant from practicing naturopathy and using the title "Dr." or "physician"), appeal dismissed for want of a substantial federal question, 352 U.S. 805, 77 S.CT. 33, 1 L.Ed.2d 38 (1956); Dantzler v. Callison, 230 S.C. 75, 94 S.E.2d 177 (denied request by naturopaths for declaratory judgment and found no due process or equal protection violations in Act prohibiting practice of naturopathy), appeal dismissed for want of a substantial federal question, 352 U.S. 939, 77 S.CT. 263, 1 L.Ed.2d 235 (1956); State v. Errington, 355 S.W.2d 952 (holding that state law making practicing medicine without a license was not unconstitutional and finding no equal protection violation to deny a state license to one who practices naturopathy if he fails to meet certain statutory requirements), appeal dismissed for want of a substantial federal question, 371 U.S. 3, 83 S.CT. 27, 9 L.Ed.2d 48 (1962); Hitchcock v. Collenberg, 140 F.Supp. 894 (D. Md.1956) (upholding Maryland Medical Practice Act in challenge by naturopathic physician, association and residents which required certain requirements before being licensed by the state), summarily affirmed, 353 U.S. 919, 77 S.CT. 679, 1 L.Ed.2d 718 (1957); Stuart v. Wilson, 211 F.Supp. 700 (N.D. Tex.1962) (upholding Texas Medical Practice Act's licensing requirements against challenge by naturopathic physicians), Aff'd, 371 U.S. 576, 83 S.CT. 547, 9 L.Ed.2d 537 (1963); and Beck v. McLeod, 240 F.Supp. 708 (D. S.C.1965), (upholding constitutional challenge to South Carolina statute establishing educational and examination requirements for one to practice naturopathy), *per curiam affirmed*, 382 U.S. 454, 86 S.CT. 645, 15 L.Ed.2d 522 (1966).

Case No. 4:06cv428-RH/WCS

53. With this background in mind, the specific bases for Plaintiff's claims herein will be addressed.

**Tenth Amendment**

Plaintiff contends that the State of Florida has violated the Tenth Amendment because it has "relinquished the power to regulate the profession of naturopathy by licensure yet it has usurped the authority of the people by prohibiting the unregulated profession." Doc. 58, p. 9. Plaintiff complains that Chapter 462 requires a license, but does not offer a license to practice naturopathy. Id. Plaintiff contends that Sperry v. Florida, 373 U.S. 379 (1963) is authority to find that the State "cannot hinder or obstruct the free use of a license granted by the Naturopathic National Council, Inc. . . . to issue Plaintiff's occupational license because federal law preempts state law." Id., at 10.

The relevant statute at issue, though not cited by Plaintiff, is § 462.023, which provides:

> The department may adopt such rules as are necessary to carry out the purposes of this chapter, initiate disciplinary action as provided by this chapter, and shall establish fees based on its estimates of the revenue required to administer this chapter but shall not exceed the fee amounts provided in this chapter. The department shall not adopt any rules which would cause any person who was not licensed in accordance with this chapter on July 1, 1959, and had not been a resident of the state for 2 years prior to such date, to become licensed.

FLA. STAT. § 462.023 (2007). Plaintiff's claim that Florida has "relinquished the power to regulate the profession of naturopathy" is legally false. Naturopathic physicians are not unregulated as FLA. STAT. § 462.11 provides:

> Doctors of naturopathy shall observe and be subject to all state, county, and municipal regulations in regard to the control of contagious and infectious diseases, the reporting of births and deaths, and to any and all

> other matters pertaining to the public health in the same manner as is required of other practitioners of the healing art.

FLA. STAT. § 462.11. Additionally, § 462.18 sets forth the educational requirements necessary for one to be licensed in the State of Florida and § 462.14 lists grounds for disciplinary action or the denial of a license. The profession is not unregulated.

Moreover, the Tenth Amendment to the United States Constitution provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Thus, the Tenth Amendment reserves to the states the powers not delegated to the federal government by the Constitution. The states have the power to regulate the medical profession to protect the health and welfare of its citizens. *See*, e.g., Idaho Ass'n of Naturopathic Physicians, Inc., *supra*, and cases cited therein. Plaintiff's Tenth Amendment claim is without merit and the motion for summary judgment should be granted as to this claim.

**Lanham Act, Trade Identity Confusion**

Plaintiff also claims that Defendants are in violation of 15 U.S.C. § 1125(a) "because they have caused trade identity confusion by the unauthorized use of the trademarked title Doctor of Naturopathy, N.D. or its derivatives." Doc. 58, p. 11. Plaintiff also claims unfair competition, causing Plaintiff economic injury, and that Defendants are "egregiously misrepresenting to the public in the statute the nature of Plaintiff's services approved under" the trademark. *Id.*

There are three requirements for bringing a claim for infringement of a trademark. "[A] claimant must show (1) that it had prior rights to the mark at issue and (2) that the

defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001), *citing* Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir. 1997).

The claim is meritless on its face because there are no allegations that Defendants *use* either the name "Naturopathic National Council, Inc." or "Doctor of Naturopathy, N.D." so as to cause confusion.  Further, Plaintiff is not the owner of the name "Naturopathic National Council, Inc." and appears to allege only that the mark "Doctor of Naturopathy, N.D." was conferred upon Plaintiff by the Council.  Accordingly, Plaintiff has not alleged ownership of that mark either.  These defects are fatal to this claim.

> The holder of a registered mark (incontestable or not) has a civil action against anyone employing an imitation of it in commerce when "such use is likely to cause confusion, or to cause mistake, or to deceive."  § 1114(1)(a).  Although an incontestable registration is "conclusive evidence . . . of the registrant's exclusive right to use the . . . mark in commerce," § 1115(b), the plaintiff's success is still subject to "proof of infringement as defined in section 1114," *ibid*.  And that, as just noted, requires a showing that the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S.CT. 2753, 120 L.Ed.2d 615 (1992) (STEVENS, J., concurring); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 935 (C.A.4 1995); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 21, Comment a (1995).

KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117, 125 S.CT. 542, 547-548, 160 L.Ed.2d 440 (2004).  It is possible that one or more of the seven licensed naturopaths in this state are using the name "Doctor of Naturopathy, N.D." and, if that is the case, they have probably been doing so for a long time.  If

Plaintiff could show an exclusive *prior* right to use that name, Plaintiff's remedy is with those persons, not with Defendants. Defendants do not infringe a trademark by regulating the practice of naturopathy. This claim should be dismissed.

**Due Process and Equal Protection of the Law**

Plaintiff claims discrimination in violation of 42 U.S.C. § 1983 because the State allows an "elite group" of seven persons to have a license to practice naturopathy but denies "Plaintiff and all other qualified persons the right to obtain a license . . . ." Doc. 58, p. 12. Plaintiff also asserts claims for due process violations and the infringement of the right to contract. *Id.*

Plaintiff's claims have been routinely denied by courts. *See* Idaho Ass'n of Naturopathic Physicians, *supra*, and cases cited therein. It has been long established that states may require that certain educational conditions be met before allowing one to practice a form of medicine as part of the state's right and authority to regulate for the welfare and safety of the public. Louisiana State Board of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A.L.R. 594, *aff'd* 274 U.S. 720 (1927); Hitchcock v. Collenberg, D.C., 140 F.Supp. 894, *aff'd* 353 U.S. 919 (1957); Schlicting v. Texas State Board of Medical Examiners, Tex., 310 S.W.2d 557 (Tex. 1958); State v. Errington, 355 S.W.2d 952, 957 (Mo. 1962). Such qualifications may be established without offending the Equal Protection Clause so long as there is a "reasonable basis" for doing so. Woods v. Holy Cross Hospital, 591 F.2d 1164, 1174 (5th Cir. 1979); *see also* Freiberg v. Francois, 2006 WL 2362046 (N.D. Fla. 2006).

The fact that a "grandfather clause" exists under Florida law, permitting seven persons to retain their license to practice naturopathy, is not arbitrary or unreasonable

and does not violate Plaintiff's equal protection rights.  Polhemus v. American Medical Ass'n 145 F.2d 357, 359 (10th Cir. 1944) (upholding the state of New Mexico's "Basic Science Law" against challenge from naturopathic physician).  The motion to dismiss should be granted as to Plaintiff's equal protection claims.

Plaintiff's due process claim also must fail.  Plaintiff alleges a denial of "economic substantive due process," doc. 58, p. 12, and asserts that "[o]utlawing naturopathy abridged Plaintiff's right to Economic Substantive Due Process."  Doc. 82, p. 9.

Plaintiff does not have a valid due process claim.  The statute at issue does not "outlaw" naturopathic medicine.  Plaintiff and other persons wishing to provide naturopathic treatment may do so as long as they meet Florida's educational qualifications and obtain the "added knowledge of health care that comes with an allopathic or osteopathic degree."  Freiberg v. Francois, 2006 WL 2362046, at *9 (N.D. Fla. 2006).  This is similar to the decision reached in Hitchcock v. Collenberg, 140 F.Supp. 894, 899 (D.C. Md. 1956):

> The Maryland law does not prohibit the practice of naturopathy.  Any person who has met the qualifications necessary to secure a license to practice medicine, i.e. to engage in the art or science of healing, may apply the principles of naturopathy in his practice.  Maryland has simply established certain requirements which must be met by any person who undertakes to practice medicine, as that term is defined . . . .

Hitchcock, 140 F.Supp. at 899.  In light of the number of cases which have held that no due process rights are violated in statutes which preclude the practice of naturopathic medicine, Plaintiff's due process claim must fail.  See Idaho Ass'n of Naturopathic Physicians, Inc., 582 F.2d 849 (4th Cir. 1978); Rastetter v. Weinberger, 379 F.Supp.

170 (D. Ariz. 1974), *aff'd* 419 U.S. 1098 (1975); Blass v. Weigel, 85 F.Supp. 775 (D.C. N.J. 1949).

Finally, Plaintiff's claim based on her "freedom to contract" is insufficient. The complaint fails to allege that Plaintiff sought a lawful contractual relationship which was impaired. Plaintiff's claim is simply another attack on the validity of state law prohibiting further licensing of naturopath physicians.

**Dormant Commerce Clause**

Plaintiff claims Defendants have violated the Dormant Commerce Clause[3] by "prohibiting the naturopathic National Council, Inc. from engaging in interstate commerce to license naturopaths and by prohibiting Plaintiff from engaging in interstate commerce with her license . . . ." Doc. 58, p. 13. Such a claim was previously resolved in Freiberg v. Francois, *supra*.

"In the absence of conflicting federal legislation, the States retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." Lewis v. BT Inv. Managers, Inc., 447 U.S. at 35, 100 S.CT. at 2015.

> [T]he first step in analyzing any law subject to judicial scrutiny under the negative Commerce Clause is to determine whether it "regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce." As we use the term here, "discrimination" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the

---

[3] The Commerce Clause both grants powers to Congress and "also limits the power of the States to erect barriers against interstate trade." Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980). This "negative command" is "known as the dormant Commerce Clause." American Trucking Associations, Inc. v. Michigan Public Service Com'n, 545 U.S. 429, 125 S.Ct. 2419, 2422, 162 L.Ed.2d 407 (2005).

> latter. If a restriction on commerce is discriminatory, it is virtually per se invalid. By contrast, nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."

<u>Oregon Waste Systems, Inc. v. Department of Environmental Quality of State of Or.</u>, 511 U.S. 93, 99, 114 S.CT. 1345, 1350, 128 L.Ed.2d 13 (1994) (citations omitted). It is unnecessary to set forth all of the analysis from <u>Freiberg</u>, but it is worth noting that Florida's refusal to license naturopaths does not have the purpose of unfairly protecting Florida licensed naturopaths from competition, especially as judged at this point in the history of the statutes, when there are only seven licensed naturopaths remaining. The remaining licensed naturopaths have been in practice for nearly 50 years, and probably more, so the "protectionism" that results from Florida's regulatory choice is of little significance to interstate commerce. Further, that there are still some licensed naturopaths in Florida is only the result of the apparent constitutional necessity to grandfather those who were licensed long ago, when the abolition of licensing took place.

Additionally, the lack of licensing in Florida applies equally to non-residents and to Florida residents like Plaintiff, who are trained in naturopathy, and only forbids the practice of naturopathy in Florida for those lacking a Florida license. Thus, the statutes only apply to intrastate transactions and thus probably does not violate the dormant Commerce Clause at all for that reason. <u>American Trucking Associations, Inc. v. Michigan Public Service Com'n,</u> *supra*, note 3, 125 S.CT. at 2423 (finding no dormant Commerce Clause violation for a flat $100 fee applying only to intrastate transactions,

applying "evenhandledly to all carriers making domestic journeys," and not reflecting an effort to tax activity taking place outside the state).

Florida has a significant interest in determining who to license as eligible to provide health care in the state, and what conditions to attach to such licenses, since these regulatory activities directly affect the health and safety of Florida citizens.  One trained in naturopathy may still practice that discipline in states that license naturopathic practice, although such a person cannot practice in Florida absent a medical degree and license.  This creates a burden on commerce because it limits the places where a naturopath, licensed as such, may practice.  But the burden on commerce is slight and is not excessive in comparison to the legitimate state interest.  Because the complaint fails to state a claim upon which relief may be granted under the dormant Commerce Clause, Defendants' motion to dismiss should be granted.

**Thirteenth Amendment**

Plaintiff claims that Chapter 462 violates the Thirteenth Amendment "in that it has the psychological effect of sending Plaintiff and traditional naturopaths in general into involuntary servitude by forcing them out of their profession . . . ."  Doc. 58, p. 13. Defendants have argued that Plaintiff has the "option to work elsewhere, or in other professions" and Florida has not subjected Plaintiff into involuntary servitude.  Doc. 72, p. 20.

The Thirteenth Amendment is aimed at *involuntary* servitude:

The Thirteenth Amendment to the Federal Constitution, made in 1865, declares that involuntary servitude shall not exist within the United States and gives Congress power to enforce the article by appropriate legislation. Congress on March 2, 1867, enacted that all laws or usages of any state 'by virtue of which any attempt shall hereafter be made to establish,

>maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise,' are null and void, and denounced it as a crime to hold, arrest, or return a person to the condition of peonage. Congress thus raised both a shield and a sword against forced labor because of debt.

Pollock v. Williams, 322 U.S. 4, 7-8, 64 S.CT. 792, 794-795, 88 L.Ed. 1095 (1944). In the Pollock case, the Court explained:

>The undoubted aim of the Thirteenth Amendment as implemented by the Antipeonage Act was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States. Forced labor in some special circumstances may be consistent with the general basic system of free labor. For example, forced labor has been sustained as a means of punishing crime, and there are duties such as work on highways which society may compel. But in general the defense against oppressive hours, pay, working conditions, or treatment is the right to change employers. When the master can compel and the laborer cannot escape the obligation to go on, there is no power below to redress and no incentive above to relieve a harsh overlordship or unwholesome conditions of work. Resulting depression of working conditions and living standards affects not only the laborer under the system, but every other with whom his labor comes in competition. Whatever of social value there may be, and of course it is great, in enforcing contracts and collection of debts, Congress has put it beyond debate that no indebtedness warrants a suspension of the right to be free from compulsory service. This congressional policy means that no state can make the quitting of work any component of a crime, or make criminal sanctions available for holding unwilling persons to labor. The federal statutory test is a practical inquiry into the utilization of an act as well as its mere form and terms.

Pollock, 322 U.S. at 17-18, 64 S.CT. at 799.

Plaintiff does not allege that she has been made to work against her will. She claims instead that Defendants have precluded her "voluntary servitude," that is, her choice of work. The Thirteenth Amendment is not implicated by her allegations at all.

## Conclusion

Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss, doc. 72, Plaintiff's third amended complaint, doc. 58, be **GRANTED** and the complaint **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

**IN CHAMBERS** at Tallahassee, Florida, on February 4, 2008.


> s/  William C. Sherrill, Jr.
> **WILLIAM C. SHERRILL, JR.**
> **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.